IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Patricia A. McKnight | Civil Action No.: 4:11-cv-02782-RBH |
| Plaintiff, | |
| v. | |
| Surgical Associates of Myrtle Beach LLC; Grand Strand Regional Medical Center, LLC; Healthport Technologies, LLC d/b/a Healthport; Magnolia OBGYN, LLC of Myrtle Beach; Liberty Home Care, LLC d/b/a Liberty Home Care of Myrtle Beach, | **ORDER** |
| Defendants. | |

This matter is before the Court on Plaintiff's Motion to Remand [Doc. # 5].[1] For the following reasons, the Motion to Remand is granted.

**Background Facts and Procedural History**

Plaintiff Patricia McKnight ("Plaintiff") alleges that she requested medical records from Defendants, several different healthcare organizations, and in turn was charged in excess of the actual costs involved in providing her with those copies. On August 30, 2011, Plaintiff filed a complaint in the South Carolina Court of Common Pleas for the Fifteenth Judicial Circuit alleging a single cause of action for violation of South Carolina's Unfair Trade Practices Act ("SCUPTA").[2]

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The issues have been briefed by the parties, and the Court believes a hearing is not necessary.

[2] Plaintiff's state court case was captioned *Patricia A. McKnight v. Surgical Assocs. of Myrtle Beach, LLC, et al.*, Case No. 2011-CP-26-7304.

In her Complaint, Plaintiff contends that federal regulations governing charges for medical records, promulgated pursuant to the Health Information Portability and Accountability Act of 1996 ("HIPAA"), "preempt South Carolina's Physicians' Patient Records Act, S.C. Code § 44-115-80, which also outlines charges health care providers may charge individuals for copying medical records." [*See* Pl.'s Compl. at ¶ 13, Doc. # 1-1.] Accordingly, Plaintiff alleges that Defendants violated SCUPTA by charging her fees greater than those authorized under applicable HIPAA regulations.

On October 12, 2011, Defendants removed the case[3] to federal court, claiming federal question jurisdiction based upon Plaintiff's reliance on HIPAA as the standard of conduct for her SCUPTA claim, and Plaintiff's assertion that HIPAA preempts South Carolina law. Plaintiff filed the Motion at issue on October 19, 2011, arguing that her case should be remanded back to state court because it does not depend upon the resolution of a substantial question of federal law.

**Standard of Review**

Remand of a case to state court following removal is governed by 28 U.S.C. §§ 1447(c) and (d). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal

---

[3] Defendants Grand Strand Regional Medical Center, LLC ("Grand Strand") and HealthPort Technologies, LLC ("HealthPort") filed the Notice of Removal before the other Defendants were served. Although the remaining Defendants have since appeared, filed an answer, and filed a motion to dismiss before this Court, the remaining Defendants do not appear to have expressly consented to removal within thirty days of service, and only Grand Strand and HealthPort filed an opposition to Plaintiff's Motion to Remand. However, no party, including Plaintiff in her Motion to Remand, disputes that all Defendants consented to removal. *See* 28 U.S.C. § 1447(c) (explaining that technical defects in the removal procedure, such as a breach of the rule of unanimity, must be raised by a party within thirty days of removal or they are waived); *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516-17 (6th Cir. 2003) (explaining that such technical defects may not be ruled upon *sua sponte*).

jurisdiction is placed on the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns," courts "must strictly construe removal jurisdiction." *Mulcahey*, 29 F.3d at 151. "If federal jurisdiction is doubtful, a remand is necessary." *Id.; see also Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir. 1993) (explaining that any doubts concerning the propriety of removal must be resolved in favor of retained state court jurisdiction).

Federal question jurisdiction arises from 28 U.S.C. § 1331, which provides "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, whether federal question jurisdiction exists is determined by the well-pleaded complaint rule." *Burbage v. Richburg*, 417 F.Supp.2d 746, 749 (D.S.C. 2006). "[F]ederal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint." *Donaldson v. City of Walterboro Police Dep't*, 466 F.Supp.2d 677, 679 (D.S.C. 2006) (internal quotation omitted). "Thus, pursuant to the well-pleaded complaint rule, the plaintiff is the master of his claim, and he may avoid federal jurisdiction by exclusive reliance on state law." *Donaldson*, 466 F.Supp.2d at 679.

## **Discussion**

Defendants acknowledge that Plaintiff's Complaint "purports on its face to assert a claim arising under [South Carolina law] . . . ." [Defs.' Opp'n, Doc. # 21, at 3.] However, Defendants advance two primary theories under which removal is nonetheless appropriate in this case: (1) Plaintiff has artfully crafted an essentially federal claim as a state-law claim; and (2) the vindication of any of Plaintiff's rights under state law necessarily turns on a substantial question

3

of federal law. The Court finds that both of these theories lack merit and will address each in turn.

I.     Artful pleading doctrine is inapplicable to this case

Defendants correctly note that a plaintiff's characterization of a claim as based solely on state law is not necessarily dispositive of whether federal question jurisdiction exists. *See Kennedy v. Orangeburg County Sheriff's Office*, No. 5:08-0873-MBS, 2008 WL 4833022, at *1 (D.S.C. Oct. 31, 2008) (citing *Moubry v. Kreb*, 58 F.Supp.2d 1041, 1045 (D. Minn. 1999)). "A plaintiff cannot thwart the removal of a case by inadvertently, mistakenly, or fraudulently concealing the federal question that would necessarily have appeared if the complaint had been well pleaded." *Id*. The artful pleading doctrine permits the court to examine whether a plaintiff has attempted to avoid removal jurisdiction by "artfully" casting essentially federal law claims as state law claims. *See id. at *2 (citing Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981)). Under the facts of this case, the artful pleading doctrine is inapplicable for at least two reasons.

First, as a definitional matter, Plaintiff did nothing to conceal any putative federal claim. Plaintiff made clear in her Complaint that she seeks damages under SCUPTA stemming from the violation of a federal statute. Defendants themselves expound upon Plaintiff's "transparent effort to have the interplay between HIPAA and SCUPTA decided by a state court." [Defs.' Opp'n, Doc. # 21, at 4.] The lack of a concealed federal claim is bolstered by Plaintiff's and Defendants' concession that HIPAA does not provide a private right of action.[4] It logically follows that if the

---

[4] In addition to this concession by Plaintiff and Defendants, the weight of authority has held that there is no private right of action under HIPAA. *See Suggs v. North Strand OB/GYN, P.C.*, No. 07-3911-TLW, 2009 WL 113445, at *5 (D.S.C. Jan. 14, 2009); *Williams v. Jones*, No. 9:07-CV-3437-MBS-GCK, 2008 WL 948285, at *1 (D.S.C. April 4, 2008); *see also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Webb v. Smart Document Solutions, LLC*,

4

sole federal statute referenced by Plaintiff provides no federal cause of action, then it can hardly be said that Plaintiff is casting a federal law claim – any such claim would be non-existent. *See Med 4 Home, Inc. v. Geriatric Servs. of Am., Inc.*, No. CV 08-1912-PHX-JAT, 2008 WL 4905499, at *3 (D. Ariz. Nov. 13, 2008) (explaining that one cannot bring an otherwise non-existent federal claim to establish federal jurisdiction).

Second, the Supreme Court has explained that "[t]he artful pleading doctrine allows removal where federal law *completely* preempts a plaintiff's state-law claim." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (emphasis added); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). By its express terms, HIPAA does not completely preempt state law:[5] "A provision or requirement under this part [42 U.S.C. §§ 1320d through 1320d-9][6] or a standard or implementation specification adopted or established under Sections 1172 through 1174 [42 U.S.C. §§ 1320d through 1320d-3] *shall not supercede a contrary provision of State law . . . .*" 42 U.S.C. § 1320d-7(b). It appears that virtually every court to examine the issue has also concluded that HIPAA does not completely preempt state-law claims. *See, e.g., I.S. v. Washington Univ.*, No. 4:11CV235SNLJ, 2011 WL 2433585, at *5 (E.D. Mo. June 14, 2011) (stating with approval proposition that HIPAA did not completely preempt state law); *Harmon, et. al. v. Maury County, Tenn., et. al.*, 1:05 CV 0026, 2005 WL 2133697, at *3 (M.D. Tenn. Aug. 31, 2005)

---

499 F.3d 1078, 1082 (9th Cir. 2007); *Acara v. Banks*, 470 F.3d 569 (5th Cir. 2006); Compliance and Enforcement, 65 Fed. Reg. 82,600, 82,601 (Dec. 28, 2000) ("Under HIPAA, individuals do not have a right to court action.").

[5] Defendants presumably agree. Although they listed complete preemption as one of three acceptable bases for removal under federal law, Defendants made no argument that complete preemption applied in this case.

[6] The HIPAA regulation governing copy fees, cited by Plaintiff in her Complaint, derives its authority from 42 U.S.C. §§ 1320d through 1320d–8. *See* 45 C.F.R. 164.524.

(holding that HIPAA did not completely preempt state law); *O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173 F.Supp.2d 1176, 1180 (D. Wyo. 2001) (same); *Wright v. Combined Ins. Co. of Am.*, 959 F.Supp. 356, 363-64 (N.D. Miss. 1997) (same); *M.P. Means, et al. v. Indep. Life and Accident Ins. Co.*, 963 F.Supp. 1131, 1135 (M.D. Ala. 1997) (same).

II.     Plaintiff's state law claim does not turn on a substantial federal question

Defendants' primary argument for removal is that this case presents a substantial federal issue. This exception to the well-pleaded complaint rule applies only to the "*small class of cases* where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (emphasis added) (quoting *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir. 1996)). The doctrine permits removal where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 219 (4th Cir. 2001) (en banc) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983)).

In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, the Supreme Court observed that "the congressional determination that there should be no federal remedy for the violation of [a] federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 (1983).

While seemingly conclusive, the Supreme Court later explained that "*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence

6

relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005). Instead, the Court articulated the inquiry as, "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 313.[7] However, it "takes more than a federal element to open the 'arising under' door." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (citation omitted). In analyzing the facts of this case under the guidance set forth in *Merrell Dow*, *Grable*, and their progeny, this Court finds that Defendants fail to show that Plaintiff's Complaint depends upon the resolution of a substantial question of federal law.

> A. Plaintiff's Complaint fails to present a substantial federal issue

> > 1. The potential preemption issues in this case are not substantial

Defendants contend that Plaintiff's Complaint presents a substantial federal issue because her "claim cannot be resolved without addressing the question of whether HIPAA preempts South Carolina medical records law." [Defs.' Opp'n, Doc. # 21, at 7.] That some preemption questions

---

[7] In their Memorandum in Opposition, Defendants contend *Grable* established a "single framework" for examining these issues. [*See* Defs.' Opp'n, Doc. # 21, at 5 (listing various elements required under *Grable*).] *Grable* stands for precisely the opposite proposition. The *Grable* Court was careful to explain that there is no "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." *Grable*, 545 U.S. at 314 (internal quotations omitted). The Court noted with approval that previous cases discussing whether a complaint raised a substantial federal issue "disclaimed the adoption of any bright-line rule." *Id.* at 317. Further, in the Sixth Circuit case relied on by Defendants for their application of the elements under *Grable*, the court explained that "no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case . . . ." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007); *see also Bd. of Directors of War Mem'l Hosp. v. Bake*, 314 Fed. App'x 529, 533 (4th Cir. 2008) (analyzing a federal jurisdiction claim under *Grable* but not applying a strict elemental approach).

7

may arise in this case is not enough to show that Plaintiff's Complaint presents a substantial federal issue.

As an initial matter, it is well settled that state courts have concurrent jurisdiction to decide federal preemption issues. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149-50 (1988) ("[W]hen a state proceeding presents a federal issue, even a preemption issue, the proper course is to seek resolution of that issue by the state court."); *see also El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 485 n.7 (1999) ("[S]tate courts[ ] can and do decide questions of federal law, and there is no reason to think that questions of federal preemption are any different.") Rather, in order for preemption alone to serve as a basis for removal, a plaintiff's claim must be completely preempted by federal law. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987). As this Court has explained, and as Defendants apparently agree, HIPAA does not completely preempt state law.

To the extent preemption issues may arise in an action alleging a SCUPTA violation, a South Carolina state court would be well-equipped to handle those issues.[8] For example, in *McLeod v. Fritz Waidner Sports Cars, Inc.*, the Attorney General brought a SCUPTA case in South Carolina state court seeking civil penalties because the defendant allegedly sold an automobile with an inaccurate odometer reading. *McLeod v. Fritz Waidner Sports Cars, Inc.,* 274 S.C. 332, 333, 263 S.E.2d 384, 385 (1980). The defendant argued that the Federal Motor Vehicle Information and Cost Savings Act preempted any state-law SCUPTA claim involving odometer

---

[8] This case is procedurally unusual in that Plaintiff herself initially made the statement that HIPAA preempts South Carolina record-keeping law. This appears to be a distinction without a difference, and this Court can find no authority that mandates a contrary analysis on this basis.

readings. *Id*. The lower court, as well as the South Carolina Supreme Court, deftly addressed the interplay between the potential federal preemption issues and the state-law SCUPTA claim. *Id*. (holding that the federal act did not preempt state-law claims for false odometer disclosures); *see also Fisher v. Yale Univ*., No. X10NNHCV044003207S, 2006 WL 1075035, at *4 (Conn. Super. Ct. April 3, 2006) (lower state court analyzing the impact of HIPAA's preemptive provisions on the state's Unfair Trade Practices Act).

    2.  HIPPA is merely a federal element in Plaintiff's state-law claim

Plaintiff invokes HIPAA only as one element of her state-law SCUPTA claim – arguing essentially that because Defendants failed to follow HIPAA, they committed an unfair trade practice. The HIPAA allegation, then, amounts to little more than a federal element in her state-law claim, which is not enough to "open the 'arising under' door." *Empire Healthchoice,* 547 U.S. at 701 (citation omitted). The Fourth Circuit has found that a district court lacked jurisdiction in an analogous case. In *Clark v. Velsicol Chemical Corp*., the plaintiffs alleged that the defendant's violation of a federal statute, which provided no right of action, constituted negligence *per se.*[9]

> Assuming arguendo that plaintiffs' view is the correct one, questions of causation and remedy, for example, would still be ones of state law, since no private federal action has been provided. Application of the particular federal statute in this case would remain but an element in plaintiffs' state negligence action and cannot give rise to federal question jurisdiction.

---

[9] In *Clark*, two United Parcel Service employees were allegedly injured by a leaking package of insecticide. *Clark,* F.2d at 196–97. The employees initially brought their negligence *per se* suit in federal court, claiming that it involved a substantial federal question because the complaint alleged violation of federal regulations as an element of the negligence *per se* cause of action. *Id*. at 197.

9

*Clark v. Velsicol Chem. Corp.*, 944 F.2d 196, 198 (4th Cir. 1991) (internal citations omitted). Like the cause of action in *Clark*, questions of causation, damages, and interpretation of SCUPTA still remain questions of state law in this case.

Similarly, courts in other jurisdictions have frequently found no substantial federal question where HIPAA violations were brought as part of state-law claims. *See, e.g., Baum v. Keystone Mercy Health Plan*, No. 11–1261, 2011 WL 4632569, at *3 (E.D. Pa. Oct. 5, 2011) ("In spite of the fact that the personal data at the heart of this case is protected by HIPAA, this is a fairly straightforward state-law tort case."); *Med 4 Home, Inc.*, 2008 WL 4905499, at *3 (remanding HIPAA claim based, in part, on the absence of a private right of action and the fact that the underlying case was a standard state-law claim); *K.V. v. Women's Healthcare Network, LLC*, No. 07-0228-CV-W-DW, 2007 WL 1655734, at *1 (W.D. Mo. June 6, 2007) ("Additionally, the state law claim raised in Count IX does not raise a substantial federal question of great federal interest. The privacy standards imposed by HIPAA are not uniquely federal and do not raise any issue of great federal interest."); *Harmon,* 2005 WL 2133697, at *2 (granting remand where "[p]laintiffs' claims fall within that broad class of state law claims based on federal regulations in the state court"); *Wright v. Combined Ins. Co. of Am.*, 959 F.Supp. 356, 363-64 (N.D. Miss. 1997) (remanding case because there was no evidence of manifest congressional intent in HIPAA to create a federal cause of action which is removable).

        3.     Supreme Court precedence indicates the lack of a substantial federal issue

Defendants cite to *Empire Healthchoice*, a Supreme Court case that explained the factors underlying the Court's decision in *Grable*, for the proposition that this case involves a disputed and substantial federal issue. However, the Fourth Circuit has stated that to the extent there is any

possible way to view *Grable* as applying to anything more than a "small class of cases," that view "was squelched in *Empire Healthchoice*." *Bd. of Directors of War Mem. Hosp. v. Bake*, 314 Fed. App'x 529, 535 (4th Cir. 2008) (internal quotations omitted). As the Fourth Circuit has explained, the Court in *Empire Healthchoice* held that federal jurisdiction was lacking and explained the reasoning for a contrary decision in *Grable* as follows:

> The dispute [in *Grable*] [1] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, [2] the question qualified as 'substantial,' and [3] its resolution was both dispositive of the case and [4] would be controlling in numerous other cases.

*Id.* at 536 (quoting *Empire Healthchoice*, 547 U.S. at 700).

The dispute here centers on the actions of private parties, resolution of any question of HIPAA preemption is not necessarily dispositive of the SCUPTA claim, and it is hard to see how resolution of a HIPAA copying costs preemption issue on the facts of this case would be controlling in "numerous" cases.[10]

> B.   The absence of a private right of action indicates that federal jurisdiction would be inconsistent with congressional intent

It is true, as Defendants contend, that *Grable* rejected the absolute notion that federal courts could remand a case solely because the federal law at issue, such as HIPAA, provided no private right of action. *Grable*, 545 U.S. at 318. Still, the lack of a private action can still be highly relevant to questions about Congressional intent and the balance between federal and state

---

[10] To be sure, if the Court decided to hear this case, it could open the floodgates of federal jurisdiction to any SCUPTA claim, and arguably any negligence claim, that involves a purported HIPAA violation. This does not mean, though, that a decision based on the facts of this case, and on this particular HIPAA provision, would be controlling in numerous other cases. It would merely do what both *Grable* and *Empire Healthchoice* expressly prohibit: allow any federal element to open the "arising under" door. *See Empire Healthchoice*, 547 U.S. at 701 (citing *Grable*, 545 U.S. at 313).

11

judicial responsibilities. *See id.*; *Henry McMaster v. Janssen Pharm. Inc.*, No. 7:07–cv–1452–HMH, 2007 WL 2022173, at *3 (D.S.C. July 10, 2007) (holding that the lack of a private right of action presented compelling evidence that removal would be at odds with congressional intent).

As discussed more fully above, HIPAA affords no private cause of action and does not completely preempt state law causes of action. These two factors "present[] compelling evidence that a finding of federal jurisdiction in the instant case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.'" *See Janssen*, No. 2007 WL 2022173, at *3; *see also Grable*, 545 U.S. at 318 (explaining that reliance on the absence of a private right of action was appropriate in *Merrell Dow* because the lack of a private action, coupled with a lack of preemption of state law causes of action, indicated an important clue as to Congress's conception of the scope of jurisdiction to be exercised) (citing *Merrell Dow*, 478 U.S. at 810).

Further, as the Fourth Circuit has explained, *Grable* exemplifies a "slim category" of cases. *Bake*, 314 Fed. App'x at 535. In *Grable*, the Court explained that the existence of federal jurisdiction would not affect the federal/state balance because the state action at issue, a quiet title case, rarely involved issues of federal law. *See Grable*, 545 U.S. at 318. Here, to allow the underlying case to proceed in this Court would federalize an entire category of state-based unfair trade practice claims "when Congress has not indicated any intent to do so. Such a finding would greatly disturb the balance between federal and state judicial responsibilities because almost any litigation within the medical industry would have the potential for the" use of medical records

12

requested pursuant to HIPAA. *Baum*, 2011 WL 4632569, at *3 (internal quotations omitted) (citing *Med 4 Home, Inc.*, 2008 WL 4905499, at *3).

## Conclusion

Based on the foregoing, Defendants have not met their burden of demonstrating that removal was proper. Because any doubts concerning the propriety of removal must be resolved in favor of state court jurisdiction, the Court **GRANTS** Plaintiff's Motion to Remand [Doc. # 5].

It is further **ORDERED** that:

This case is **REMANDED** to the South Carolina Court of Common Pleas for Horry County, South Carolina. A certified copy of this Order of Remand shall be mailed by the Clerk of this Court to the Clerk of the Court of Common Pleas, Horry County, South Carolina.

All pending motions, including Defendants' motions to dismiss [Doc. # 14, 20] and Defendants' motion to stay the scheduling order [Doc. #23] are **DISMISSED** without prejudice as moot.

**IT IS SO ORDERED.**

                                              s/ R. Bryan Harwell
                                              R. Bryan Harwell
                                              United States District Judge

Florence, South Carolina
November 18, 2011